1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11 | CATHERINE WOOLSEY; CAROL          CASE NO. 15cv530-WQH-BGS
   | BALL; and RACHEL REIDINGER,
12 | both individually on behalf of himself   ORDER
   | and all others similarly situated,
13
   |                              Plaintiffs,
14 |      vs.

15 | J.P. MORGAN VENTURES
   | ENERGY CORPORATION; and J.P.
16 | MORGAN CHASE & CO.,

17 |                              Defendants,

18

HAYES, Judge:

19
20          The matter before the Court is the Motion to Dismiss Complaint (ECF No. 16)

filed by Defendants J.P. Morgan Ventures Energy Corporation and J.P. Morgan Chase
21
& Co.
22
**I.     Background**
23
24          On March 9, 2015, Plaintiffs Catherine Woolsey, Carol Ball, and Rachel

Reidinger filed the Complaint, individually and on behalf of all others similarly
25
situated, against J.P. Morgan Ventures Energy Corporation and J.P. Morgan Chase &
26
Co.   On May 4, 2015, Defendants filed the Motion to Dismiss Complaint with
27
prejudice.   (ECF No. 16).   Defendants contend that the filed rate doctrine bars
28
Plaintiffs' claims because they interfere with a federal agency's exclusive authority to

1   set rates for specified utilities.  Defendants further contend that Plaintiffs do not state

2   a proper RICO claim.  Plaintiffs contend that the filed rate doctrine does not bar

3   Plaintiffs' claims because this case fits within an exception to the filed rate doctrine that

4   applies when an agency rejects or retroactively resets previously filed rates.

5   **II.      Allegations of Complaint**

6         "JPM Ventures is a wholly owned subsidiary of JPMorgan.  JPM Ventures

7   engages in financial transactions related to commodities, including electricity.  Its

8   electrical transactions include leasing the rights to the output of a number of electrical

9   generating plants in Southern California.  Power produced by those plants is sold by

10  JPM Ventures in the California electrical wholesale market."  (ECF No. 1 ¶ 2).  "The

11  wholesale market is operated by California Independent System Operator Corporation

12  (CAISO), a nonprofit public benefit corporation that controls and manages 80% of the

13  California electrical transmission grid.  CAISO is regulated by [the Federal Energy

14  Regulatory Commission (FERC)]."  *Id*. ¶ 3.  "Electricity is bought and sold in the

15  wholesale market through an automated market system operated by CAISO."  *Id*. ¶ 4.

16        "Defendants manipulated the price of electricity in the California electricity

17  market, to the detriment of California retail electrical consumers." *Id*. ¶ 1.  "By illegally

18  exploiting CAISO's bidding rules and the limitations of its automated system, JPM

19  Ventures turned inefficient power plants that ordinarily lost money into highly

20  profitable assets."  *Id*. ¶ 4.  "More specifically, JPM Ventures knowingly and willfully

21  violated 16 U.S.C. §824v(a), which prohibits using manipulative or deceptive devices

22  or contrivances in connection with the purchase or sale of electric energy.  When

23  queried about its bidding practices by CAISO's market monitor unit, JPM Ventures

24  made fraudulent misrepresentations about the reasons for its bidding practices and

25  submitted misleading profit and loss statements in violation of 16 U.S.C. §824u.  Such

26  violations are punishable pursuant to 16 U.S.C. §825o by fines and imprisonment." *Id*.

27  ¶ 5.

28        "In settlement of a formal investigation undertaken by FERC, JPM Ventures

admitted the facts constituting the violations in writing.  On July 30, 2013, FERC issued an order approving the settlement with JPM Energy." *Id*. ¶ 6.  "Among other things, FERC determined that (a) between September 2010 and November 2012 JPM Ventures designed its bidding strategies to obtain above market prices for its sale of electricity, and that its designs were usually successful in garnering premium rates for the electricity it generated and sold; (b) JPM Ventures employed fraudulent schemes, artifices, devices, and contrivances, and made false statements or material omissions, or engaged in a course of business that operated or would operate as a fraud on participants in the California wholesale electricity market and on CAISO; and (c) JPM Ventures' bids were not based on competitive market principles but on a manipulation of the market.  JPM Ventures' purpose in submitting its bids was not to make money based on market fundamentals, but to create artificial conditions that would cause the CAISO system to pay JPM Ventures at above market rates based on illegal market manipulations." *Id*. ¶ 8.

"FERC's enforcement powers against violators of the Federal Power Act (FPA) are limited to seeking remediation on behalf of injured third parties.  As a result, FERC's recovery on behalf of California retail electricity consumers was limited to unjust profits illegally gotten by JPM Ventures in the amount of $124 million (JPM Ventures also paid fines to the U.S. Treasury).  FERC is not statutorily or otherwise empowered to enforce violations of the FPA by requiring violators to pay actual damages to parties injured by their violations.  In exercising the enforcement powers that it has, FERC rejected and disapproved the wholesale electricity rates resulting from JPM Ventures' market manipulation and recognized that the rates were incorrect." *Id*. ¶ 7.  "The actual damages to California electrical ratepayers from the cost of paying for defendants' illegal market manipulation was substantially in excess of the unjust profits FERC recouped on behalf of California electrical consumers." *Id*. ¶ 9.

Plaintiffs assert that Defendants J.P. Morgan Ventures Energy Corporation and J.P. Morgan Chase & Co. violated 18 U.S.C. § 1962(c) of the Racketeer Influenced and

1  Corrupt Organization Act ("RICO").  Plaintiffs request compensatory damages, treble

2  damages, costs of suit, including reasonable attorney's fees, and such further relief that

3  the Court deems just and equitable.

4  **III.   Legal Standard**s

5        Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move

6  for dismissal on grounds that the court lacks jurisdiction over the subject matter.  Fed.

7  R. Civ. P. 12(b)(1).  The burden is on the plaintiff to establish that the court has subject

8  matter jurisdiction over an action.  *Assoc. of Med. Colls. v. United States,* 217 F.3d 770,

9  778-779 (9th Cir. 2000).

10       Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

11  a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of

12  Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

13  contain . . . a short and plain statement of the claim showing that the pleader is entitled

14  to relief."   Fed. R. Civ. P. 8(a)(2).  "A district court's dismissal for failure to state a

15  claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a

16  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

17  legal theory.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)

18  (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

19       "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief"

20  requires more than labels and conclusions, and a formulaic recitation of the elements

21  of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

22  (quoting Fed. R. Civ. P. 8(a)).   "To survive a motion to dismiss, a complaint must

23  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

24  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

25  550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual

26  content that allows the court to draw the reasonable inference that the defendant is liable

27  for the misconduct alleged."   *Id*. (citation omitted).  "[T]he tenet that a court must

28  accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation and internal quotation marks omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (internal quotation marks omitted).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted).

**IV.  "Filed Rate" Doctrine**

Defendants contend that the "filed rate" doctrine bars Plaintiffs' claims based on the rates charged or paid to market participants in the wholesale electricity markets.  Defendants contend that Plaintiffs' Complaint is founded on allegedly manipulative conduct in FERC-regulated wholesale electricity markets–specifically, alleged manipulation by JPM Ventures as a seller of wholesale electricity into the automated

markets operated by CAISO pursuant to the tariff filed with and accepted by FERC. Defendants further contend that "Plaintiffs' Complaint acknowledges that the 'actual damages,' . . . they seek for JPM Ventures' alleged violations would require the Court to determine what the proper rates would have been for 'wholesale electrical prices,' absent the alleged manipulation, and what damages should be paid to Plaintiffs for the higher energy prices allegedly caused by JPM Ventures' tariff violations." (ECF No. 16-1 at 17-18). Defendants contend that the filed rate doctrine forbids courts from setting a rate different from the rate set by FERC or assuming a hypothetical rate when there are allegations that the rates FERC set were unfair or improper. *Id.* at 18.

Plaintiffs contend that this case fits squarely within the "*Carlin*"[1] exception to the filed rate doctrine because FERC has rejected the rates/prices resulting from Defendants' alleged market manipulations. Plaintiffs contend that the jurisdiction of FERC is not limited to new or changed rates and FERC can impose remedies retroactively when the FPA is violated. Plaintiffs contend that "pursuant to the FERC consent agreement, defendants were required to disgorge the unjust profits they had amassed from prices illegally inflated by their manipulative bidding practices." (ECF No. 23 at 13). Plaintiffs contend that FERC rejected the previous rates set by the agency when it ordered disgorgement of profits and imposed civil penalties on Defendants. *Id.* at 14.

### A.    Applicability of the Filed Rate Doctrine

"The [filed rate] doctrine is a judicial creation that arises from decisions interpreting federal statutes that give federal agencies exclusive jurisdiction to set rates for specified utilities, originally through rate-setting procedures involving the filing of rates with the agencies." *E. & J. Gallo Winery v. Encana Corp.*, 503 F.3d 1027, 1033

---

[1] *Carlin v. Dairy America, Inc.*, 705 F.3d 856 (9th Cir. 2012) (holding that when an agency has recognized that past filed rates were incorrect due to wrongful misreporting and retroactively rejects those rates but has no authority to take remedial action against the wrongdoer, the filed rate doctrine does not bar private claims for damages).

(9th Cir. 2007).   The doctrine is grounded in an agency's exclusive rate-setting authority.  *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-30 (9th Cir. 2002).   "[The filed rate] doctrine is a form of deference and preemption, which precludes interference with the rate setting authority of an administrative agency, like FERC."  *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007).   "Under the filed rate doctrine, the terms of the filed tariff are considered to be the law and to therefore conclusively and exclusively enumerate the rights and liabilities of the contracting parties."  *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 853 (9th Cir. 2004) *opinion amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004) (citation and internal quotation marks omitted). The filed rate doctrine has "three purposes: deference to the agencies' greater expertise in rate-setting, preventing discrimination by ensuring all ratepayers face the same price, and avoiding disruption of a Congressional scheme for uniform price regulation." *Carlin*, 705 F.3d at 880.

The "filed rate" doctrine is a "far reaching doctrine."  *Id*.  The Ninth Circuit Court of Appeals explained,

> At its most basic, the filed rate doctrine provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question.  The doctrine applies to rates charged by railroads, natural gas companies, and other interstate operators over whom federal agencies have exclusive power to set rates.  More relevant here, the Supreme Court has extended the doctrine to the Federal Power Act and to electricity rates.
> ....
> As further developed, the filed rate doctrine has prohibited not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, but also from assuming a hypothetical rate different from that actually set by FERC.

*Transmission Agency of N. Cal.*, 295 F.3d at 929-30 (citations omitted); *see also Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578–579 (1981) (the filed rate doctrine prohibits "speculation about what the Commission might have done").   "The filed rate doctrine's fortification against direct attack is impenetrable.  It turns away both federal and state

antitrust actions; it turns away Racketeer Influenced and Corrupt Organization Act actions….." *Wah Chang*, 507 F.3d at 1225.

The Ninth Circuit Court of Appeals has found that the filed rate doctrine prohibits courts from assuming a hypothetical rate different from the rate actually set by FERC. In *Wah Chang*, the plaintiff, Wah Chang, claimed that it purchased electricity "at retail from PacifiCorp, a purchaser of electricity in the wholesale spot market." *Id.* at 1224. "Under its purchase contract, Wah Chang's rates were indexed to the wholesale spot market price at the California-Oregon border, causing price changes in that market to be passed on to Wah Chang." *Id.* The court explained that:

> Try as it may, Wah Chang cannot avoid the fact that it seeks what amounts to having the courts determine what rates the Energy Companies should have charged instead of the rates they did charge. Wah Chang would inevitably drag the courts into a determination of what rate would be fair and proper. That is precisely what Wah Chang cannot do.

*Id.* at 1226. *See also Transmission Agency of N.Cal.*, 295 F.3d at 930 (the filed rate doctrine prohibits courts "from setting a rate different from that chosen by FERC [or] from assuming a hypothetical rate different from that actually set by FERC").

In this case, Plaintiffs' Complaint challenges the rates charged for electricity. Plaintiffs are residential consumers of electricity, billed for electrical consumption by investor owned utilities SDG&E and SCE. Defendant JPM Ventures owns a number of electrical generating plants that sell electricity in the California wholesale market through an automated market system operated by CAISO. SDG&E and SCE purchase electricity in the wholesale market. Plaintiffs allege that CAISO uses "configuration guides" to calculate amounts billed to investor owned utilities. Plaintiffs allege that Defendants' manipulative and deceptive bidding prices increased the market price for electricity, inflating the energy rates passed on to the investor owned utilities and retail consumers.

Plaintiffs request damages including:

> 1) that portion of their electric bills that resulted from monies defendants' garnered from their racketeering activities, including employing and utilizing illegal, fraudulent, and manipulative schemes, artifices, devices

1    and contrivances in the California wholesale electric market; and 2) that
2    portion of their electric bills that resulted from higher wholesale electrical
     prices proximately caused by defendants' market manipulation.

3    (ECF No. 1 ¶ 153).  In order to award Plaintiffs the damages sought in this case, the

4    Court would be required to determine rates that the Defendants should have charged,

5    which is prohibited by the "filed rate" doctrine.  Plaintiffs concede that the filed rate

6    doctrine bars actions involving the determination of a rate regulated by a federal agency

7    but asserts that the filed rate doctrine should not apply to the facts of this case.

8              **B.    Exception to the Filed Rate Doctrine**

9         "The Supreme Court has said that the filed rate doctrine does not apply to bar a

10   private litigant's rate-related claims if the rate has been 'suspended' or 'set aside' by the

11   relevant agency."  *Carlin*, 705 F.3d at 874 (citing *Keogh v. Chi. & Nw. Ry. Co.*, 260

12   U.S. 156, 163 (1922)).  In *Carlin*, Dairy America, a non-profit entity comprised of dairy

13   cooperatives that sold approximately 75% of nonfat dairy milk in the United States,

14   misreported price information to the United States Department of Agriculture

15   ("USDA").  *Id.* at 864.  Dairy America's misreporting led to inaccurate Federal Milk

16   Marketing Order ("FMMO") prices issued by the USDA and caused milk producers to

17   be paid minimum prices that were lower than the price they would have been paid

18   otherwise.  *Id.* at 864-65.  Dairy America profited significantly from this pricing

19   scheme.  *Id.* at 864.

20        When Dairy America's misreporting was confirmed, the USDA "took steps to

21   determine the effect of the misinformation, calculated corrective prices . . . and enacted

22   regulations and amendments to the FMMOs for improved oversight of the reporting

23   process."  *Id.* at 873.  The Agriculture Marketing Service ("AMS"), which derived its

24   authority from the Secretary of Agriculture, reported that the total value of milk

25   regulated under the FMMO program during the relevant period was understated by $50

26   million.  *Id.* at 865.  After recognizing that Dairy America's misreporting caused the

27   rates to be incorrect when filed, the USDA took no further action to issue corrective

28   disbursements to milk producers who had been harmed.  *Id.* at 879.  Raw milk

producers nationwide filed a class action against Dairy America.  The district court dismissed the plaintiffs' claims "on the grounds that they were not justifiable pursuant to  the filed rate doctrine." *Id.* at 866.

On appeal, the Ninth Circuit Court of Appeals found that the filed rate doctrine was applicable because the USDA possessed and exercised authority "to address problems as to the agency-set minimum prices for raw milk under the FMMO." *Id.* at 873.  The court recognized a "narrow exception" to the filed rate doctrine that allows a district court to assess liability and damages when an agency has rejected and retroactively reset past filed rates that were subject to manipulation. *Id.* at 879. However, the court concluded that if the controlling statute prohibits the federal agency from retroactively rejecting the filed rate or limits the application of corrective rates to prospective situations the exception does not apply. *Id.* at 875 ("Obviously, where the controlling statute prohibits the federal agency from altering a filed rate retroactively or limits any application of reconsidered rates to prospective situations, then the agency cannot effectively suspend or set aside the published rates for purposes of a lawsuit seeking recovery based on injuries arising from the imposition of those rates.").

The court concluded that the exception applied and the filed rate doctrine did not bar the plaintiffs' claims because nothing in the controlling statutes "bar[red] the USDA from revising rates where handlers have supplied incorrect data to the agency" and "the federal agency itself determined that the FMMO prices were incorrect." *Id.* at 874-75. The court also found that "permitting the rate-related claims to move forward [was] the only way to remedy the injuries suffered by the milk producers" because the USDA "lacked the authority to sanction Dairy America." *Id.* at 879-80.

The court found that "the policy considerations behind the doctrine [did] not justify applying the doctrine as a bar . . . ." *Id.* at 874.   Specifically, the court found that "the actions the USDA would have taken had it had correct data from Dairy America are clear: the USDA would have announced different FMMO prices, ones more favorable to the producers." *Id.* at 881-82.  The court found that allowing the

plaintiffs' claims against Dairy America would not pose a significant risk of price discrimination because rather than putting Dairy America at a competitive disadvantage, "damages would at least partially cancel out [the] undeserved benefit" Dairy America received by misreporting prices. *Id.* at 882. Allowing the plaintiffs' claims to survive did not require the district court to "second-guess agency decision-making" or engage in "hypothetical speculation" about what the USDA would have done if price information had not been misreported. *Id.*

Key differences exist between the USDA in *Carlin* and FERC in this case. The Ninth Circuit has held that the Federal Power Act § 206 (16 U.S.C.A. § 824e) does not grant FERC the authority to retroactively reset rates, and any adjustments in rates may only be applied prospectively. *See City of Redding v. F.E.R.C.*, 693 F.3d 828, 838 (9th Cir. 2012) ("[T]he intent of Congress is clear that § 206 does not grant FERC the broad authority to retroactively reset rates charged by all market participants."). "Section 206(a) provides that whenever FERC finds a rate to be unjust and unreasonable, FERC shall determine the just and reasonable rate . . . to be thereafter observed and in force. FERC's authority under this provision, however, is limited by being prospective only, and does not permit retroactive adjustments to rates." *Id.* at 838 (citations and internal quotation marks omitted); *see also City of Anaheim v. F.E.R.C.*, 558 F.3d 521, 523 (D.C.Cir. 2009) ("On its face, § 206(a) prohibits retroactive adjustments of rates."); *Exxon Mobil Corp. v. F.E.R.C.*, 571 F.3d 1208, 1211 (D.C. Cir. 2009) (observing that under § 206(a) "FERC may not retroactively alter a filed rate to compensate for prior over- or underpayments"); *Pub. Utils. Comm'n of State of Cal. V. FERC*, 462 F.3d 1027, 1063 (9th Cir. 2006) ("One of the fundamental tenets in FERC jurisprudence is the rule against retroactive ratemaking. . . . If FERC finds a rate unjust and unreasonable pursuant to a § 206 complaint, it must order imposition of a just and reasonable rate; however, the refund is limited to periods subsequent to the 'refund effective date' established by FERC, which must be at least sixty days after the filing of the complaint."). Unlike the USDA in *Carlin*, FERC did not reject or retroactively reset

1  rates because it has no authority to do so.  *See Carlin*, 705 F.3d at 873, 879 ("the

2  [USDA] took steps to determine the effect of the misinformation, calculated corrective

3  prices . . ." and "the record supports the conclusion that the USDA rejected the FMMO

4  rates at issue").  Because Section 206(a) does not permit retroactive adjustments to rates

5  and FERC's authority is prospective only, the Court finds that the "narrow exception

6  to the general rule that the filed rate . . . functions so as to bar . . . price-related claims"

7  is not applicable in this case.  *See id.*

8      FERC is endowed with authority to impose "remedies for breach and non-

9  performance of FERC approved operating agreements in the interstate wholesale

10  electricity market."  *California ex rel Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 852 (9th

11  Cir. 2004).  Unlike the USDA in *Carlin*, FERC has authority to remedy alleged market

12  manipulations.  *See* 705 F.3d at 879.  After investigating JPM Ventures' alleged rate

13  manipulations, FERC approved a settlement agreement with Defendants ordering JPM

14  Ventures to pay civil penalties and disgorge profits obtained through its alleged

15  manipulations.  *In re Make-Whole Payments*, 144 FERC ¶ 61,068, 2013 WL 3962396,

16  at *3 (2013).  FERC ordered $124 million of disgorged profits to be allocated "for the

17  benefit of current CAISO ratepayers through an internal accounting procedure.  *Id.* at

18  *88.  Unlike *Carlin*, permitting price-related claims in federal court is not the only

19  means of "imposing consequences" on JPM Ventures for its alleged manipulation of

20  rates, nor are price-related claims the exclusive remedy for injured ratepayers.  *See*

21  *Carlin*, 705 F.3d at 878-80 ("the statutory goals . . . and the protection of milk

22  producers  would  both  be  served  by  imposing  consequences  on  handlers  for

23  misreporting data" but "the agency lacked the authority to sanction Dairy America" and

24  "permitting the rate-related claims to move forward [was] the only way to remedy the

25  injuries suffered by the milk producers")

26      The purposes of the filed rate doctrine–deference to agency expertise, preventing

27  discrimination among ratepayers, and upholding a statutory scheme for uniform price

28  regulation–are served by applying the doctrine to bar the claims in this case.  In this

case, calculating damages would involve speculation to determine the rate FERC would have approved had JPM Ventures not engaged in the alleged rate manipulation. Assessing the merits of the claims in this case would require the court to second-guess FERC's past filed rates and consider the adequacy of settlement agreement that FERC has already entered with JPM Ventures.  The purposes of the filed rate doctrine are served by barring plaintiffs' claims and precluding the Court from making these determinations.

**FERC's Exclusive Jurisdiction**

Defendants further contend that Plaintiffs' RICO claim must be dismissed as an impermissible attempt to circumvent FERC's exclusive authority to enforce the FPA. Defendants contend that Plaintiffs rely on statutory provisions of the FPA, specifically, 16 U.S.C. §§ 824u, 824v(a), and 825o, in alleging that Defendants violated RICO. Defendants contend that the cited statutory provisions and the FPA statutory scheme as a whole do not establish a private cause of action for aggrieved parties.  Defendants contend that the cited statutory provisions mandate that FERC has exclusive jurisdiction to regulate the wholesale electricity markets and to enforce the FPA's requirements. Defendants contend that Plaintiffs' allegations of FPA violations and "mail and wire fraud" relate to the same alleged course of conduct by Defendants, the alleged manipulation of the wholesale electricity markets, which falls squarely within FERC's exclusive statutory authority to oversee the wholesale electricity markets and enforce the FPA.

Plaintiffs contend that they do not seek to enforce the FPA, rather Plaintiffs bring a RICO claim.  Plaintiffs contend that

> the gravamen of this action is that defendants, by 'dishonest methods or schemes,' obtained exorbitant prices for the electricity they sold.  More specifically, defendants engaged in bidding activity that misused the rules (tariff) governing the California wholesale electrical marketplace and lied about the reasons for their bidding practices.  The fraudulent scheme was intended to mislead wholesale market buyers, sellers, and CAISO to enable defendants to earn noncompetitive prices for the electricity they sold.  And plaintiffs were injured by paying higher prices for electricity than they otherwise would have.

1   (ECF No. 23 at 20). Plaintiffs contend that their claim "is based squarely on RICO and

2   not on the FPA." *Id.* Plaintiffs contend that "[w]hether or not defendants had violated

3   the FPA, their actions in deceiving CAISO and market participants to obtain higher

4   prices for electricity constitute RICO violations." *Id.*

5       Courts have held that non-compliance with a regulatory statute affording

6   administrative remedies cannot form the basis for a civil RICO claim. *See, e.g.,*

7   *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) ("[I]n light of the

8   HEA's enforcement scheme, granting the Secretary of Education exclusive authority

9   to remedy violations of the HEA, and the fact that the HEA does not confer a private

10  right of action, the Court finds that the failure to disclose Stafford Loan information,

11  even if in violation of the HEA, cannot form the basis for a civil RICO claim."); *New*

12  *York Institute of Dietetics, Inc.*, No. 94-CIV-4858, 1995 WL 562189, at *4 (S.D.N.Y.

13  Sept. 21, 1995) (dismissing RICO claim based on alleged HEA violations after

14  concluding that plaintiffs cannot circumvent the HEA's administrative remedies by

15  "packaging" their HEA claim as a RICO claim); *Petrochem Insulation, Inc. v. N. Cal.*

16  *& N. Nev. Pipe Trades Counsel*, No. C-90-3628 EFL, 1991 WL 158701, at *7 (N.D.

17  Cal. Apr. 30, 1991) ("The complaint asserts that criminal extortion pursuant to the

18  Hobbs Act and California law constitutes the predicate act for its RICO claim.

19  However, the claim of criminal extortion is wholly dependent upon a violation of the

20  NLRA. . . . Accordingly, because the only predicate acts alleged are bottomed upon

21  violations of the labor laws, the RICO claims are preempted by the NLRA."); *Danielsen*

22  *v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991)

23  (affirming dismissal of RICO claim where alleged mail and wire fraud consisted of

24  violations of the Service Contract Act, which had an exclusive administrative remedy);

25  *Norman v. Niagara Mohawk Power Group*, 873 F.2d 634, 637-38 (2d Cir.1989)

26  (rejecting plaintiffs' attempt to circumvent administrative remedies in Energy

27  Reorganization Act by pleading their claim in RICO terms).

28

In this case, Plaintiff's RICO claim is wholly dependent on the alleged violations of specific provisions of the FPA, 16 U.S.C. 824u, 824v(a), and 825o. *See* ECF No. 23 at 20 ("The gravemen of this action is that defendants, by 'dishonest methods or schemes,' obtained exorbitant prices for the electricity they sold. More specifically, defendants engaged in bidding activity that misused the rules (tariff) governing the California wholesale electrical marketplace and lied about the reasons for their bidding practices. . . . The fraudulent scheme was intended to mislead wholesale market buyers, sellers, and CAISO to enable defendants to earn noncompetitive prices for the electricity they sold…. Therefore plaintiffs have pleaded the elements of mail and wire fraud. . . ."). "Under the Federal Power Act ("FPA"), FERC has jurisdiction over facilities engaged in the transmission of electric energy in interstate commerce and [] the sale of electric energy at wholesale in interstate commerce." *Wah Chang*, 507 F.3d at 1229 (internal quotations omitted). The FPA does not provide a private right of action. *See* 16 U.S.C.A. § 824v(b) ("Nothing in this section shall be construed to create a private right of action."). Because FERC has exclusive authority to remedy violations of the FPA and the FPA does not confer a private right of action, Defendants alleged violations of the FPA cannot form the basis of a RICO claim.

## IV. Conclusion

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Complaint with prejudice (ECF No. 16) is granted. The Clerk of the Court shall enter judgment for Defendants and against Plaintiffs.

DATED:  October 26, 2015

**WILLIAM Q. HAYES**
United States District Judge